**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **BRIAN SITLER,**<br><br>**Plaintiff,**<br>**v.**<br><br>**THE CENTER FOR YOUTH EVANGELISM, INC., ANDREWS UNIVERSITY, HOPE CHANNEL INTERNATIONAL INC., ADVENTSOURCE, INC., and JOHN DOES 1-100**<br><br>**Defendants.** | ) | **Case No.3:22-cv-00613** |

**FIRST AMENDED COMPLAINT**

Plaintiff, Brian Sitler, files this First Amended Complaint against Defendants, The Center for Youth Evangelism, Inc., Andrews University, Hope Channel International, Inc., and AdventSource, Inc. This is an action for Copyright Infringement in violation of 17 U.S.C. §§ 101 *et seq*. and Breach of Contract.

**I. PARTIES**

1. Plaintiff Brian Sitler ("Plaintiff") is in the business of creating, writing, composing, producing, and recording music.

2. Sitler is an individual residing at 634 Hurricane Creek Road, Chattanooga, Tennessee 37421.

3. Upon information and belief, Defendant The Center for Youth Evangelism, Inc. ("CYE") is a nonprofit corporation organized under the laws of the State of Michigan.

4. Defendant CYE has its principal place of business at 4150 Administration Drive, Berrien Springs, Michigan 49104. Defendant CYE has been served via its registered agent, Gwendolyn Powell Braswell, at 4150 Administration Drive, #321, Berrien Springs, Michigan 49104.

5. Upon information and belief, Defendant Andrews University is a nonprofit corporation organized under the law of the State of Michigan.

6. Defendant Andrews University ("Andrews") has its principal place of business at 4150 Administration Drive, Berrien Springs, Michigan 49104. Defendant Andrews has been served via its registered agent, Gwendolyn Powell Braswell, at 4150 Administration Drive, #321, Berrien Springs, Michigan 49104. Upon information and belief, Defendant Andrews is affiliated with and acts in concert with, Defendants CYE, Hope Channel International, Inc., and AdventSource, Inc.

7. Upon information and belief, Defendant Hope Channel International, Inc. ("Hope Channel") is a corporation organized under the law of the State of Maryland.

8. Defendant Hope Channel has its principal place of business at 12501 Old Columbia Pike, Silver Springs, Maryland 20904. Defendant Hope Channel has been served via its registered agent, The Corporation Trust, Incorporated, at 2405 York Road, Suite 201, Lutherville Timonium, Maryland 21093.

9. Upon information and belief, Defendant AdventSource, Inc. ("AdventSource") is a nonprofit corporation organized under the law of the State of Nebraska.

10. Defendant Adventsource has its principal place of business at 5120 Prescott Avenue, Lincoln, Nebraska 68506. Defendant Adventsource has been served via its registered agent, C T Corporation System, 5601 South 59th Street, Suite C, Lincoln, Nebraska 68516.

## II. VENUE AND JURISDICTION

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 1338.

12. This Court has both general and specific personal jurisdiction over Defendants, who have had substantial, continuous, and systematic contacts with Tennessee that approximate physical presence in this State. Personal jurisdiction over Defendants is authorized by Tennessee's long-arm statute, codified at Tenn. Code Ann. §§ 20-2-201, 20-2-214 and 20-2-223.

13. Alternatively, Defendants have minimum contacts with Tennessee, so as to justify specific jurisdiction because (1) Defendants have performed specific acts in this State and have purposefully availed themselves of the privileges of conducting activities in this State, (2) Plaintiff's claims arise out of, a nd result from those acts, and (3) the Court's jurisdiction over Defendants is reasonable.

14. This Court has supplemental jurisdiction over Plaintiff's pendent state law claim pursuant to 28 U.S.C. § 1367.

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims have occurred in this District.

16. All Defendants have minimum contacts with the state of Tennessee. Specific jurisdiction over each Defendant is appropriate because each Defendant has performed specific acts in this State and has purposefully availed itself of the privileges of conducting activities in this State. Plaintiff's claims arise out of and result from those acts. Thus, this Court's exercise of personal jurisdiction over Defendants is reasonable.

17. CYE is an organization which provides materials and co-ordinates events for the development of Seventh Day Adventist Youths. CYE solicits donations via its official website.

18. Plaintiff and his partner, Andrew Strong, entered into an agreement with CYE dated August 3, 2015 ("Agreement") to create music, script, and sound recordings for five 30-40 minute live theatrical performances ("Performances"). A true and correct copy of the Agreement is attached hereto as Exhibit A.

19. Plaintiff performed his obligations under the Agreement in the state of Tennessee, which obligations were accepted by Defendant CYE.

20. Representatives of CYE attended certain recording sessions in Tennessee at which Plaintiff performed his obligations under the Agreement.

21. CYE has not challenged the personal jurisdiction of this Court.

22. Andrews is a private university located in Berrien Springs, Michigan. Founded in 1874, Andrews was the first higher education facility started by the Seventh-day Adventist Church and is the flagship university of the Seventh-day Adventist school system.

23. Upon information and belief, CYE is an alter-ego of Andrews as a matter of law.

24. Plaintiff was paid for his services in connection with the Agreement by check drafted on an Andrews bank account. Andrews sent Plaintiff an IRS 1099 tax form for such payment.

25. Andrews established the Center for Youth Resources in 1979, which would be renamed the Center for Youth Evangelism. From its inception until the present, CYE has been located on the Andrews' campus.

26. CYE was incorporated in the year 2009.

27. CYE occupies office space provided by Andrews on the Andrews campus. CYE does not pay rent to Andrews for such offices. There is no written lease between Andrews and CYE for the use of such space.

28. CYE and Andrews use the same physical address.

29. Upon information and belief, all persons providing services on behalf of CYE in the production of the 2019 Pathfinders Camporee were Andrews employees as a matter of law. In the alternative, Andrews and CYE shares employees with CYE in its day-to-day operations.

30. Upon information and belief, all persons working in CYE day-to-day operations are paid by Andrews from an Andrews bank account using Andrews' funds. Such persons receive a W-2 showing Andrews as the employer and do not receive a W-2 from CYE.

31. Upon information and belief, Andrews provides human resource services and an employee handbook to persons performing CYE's day-to-day operations.

32. Upon Information and belief, Andrews provides health insurance and other employee benefits to persons performing CYE's day-to-day operations.

33. Upon information and belief, Andrews University provides phone lines and office equipment for persons performing CYE's day-to-day operations.

34. Upon information and belief, Andrews University provides email addresses at the email suffix "andrews.edu" for persons performing CYE's day-to-day operations.

35. Upon information and belief, Andrews provides custodial services for CYE.


Case 3:22-cv-00613 Document 67 Filed 03/13/24 Page 5 of 19 PageID #: 821

36. Upon information and belief, CYE's Board of Trustees is made up of a controlling majority of seats held by Andrews Board Members.

37. Andrews prepares consolidated financial statements for itself and its subsidiaries on an annual basis. Andrews commissions an independent audit of such consolidated financial statements. Attached hereto is a true and correct copy of the Independent Auditor's Report for Andrews' consolidated statements of financial position as of April 30, 2020 and 2019 and the related consolidated statements of activities, functional expenses and cash flows for the years then ended, and the related notes to the consolidated financial statements. A true and correct copy of the described Independent Auditor's Report is attached hereto as Exhibit B.

38. The Independent Auditor's Report states that Andrews operates "The Center for Youth Evangelism" as a wholly-owned subsidiary of Andrews. See Exhibit B, page 8.

39. Upon information and belief, Andrews and CYE file consolidated tax returns.

40. Prior to its incorporation in 2009, CYE operated as a department of Andrews. Prior to 2009, Andrews' was responsible for accounting for financial information related to CYE as an Andrews' department. After its incorporation in 2009, Andrews continued to handle the financial accounting for CYE. Andrews treated financial accounting for CYE prior to CYE's incorporation in 2009 the same as it treated CYE financial accounting after 2009.

41. Upon information and belief, Andrews owns and stores assets deployed in the execution of International Pathfinders Camporees, including but not limited to the 2019 and 2024 Camporees.

42. Upon information and belief, Andrews enters into leases for land and equipment used in the execution of the Camporee.

43. Upon information and belief, Andrews deposits revenue generated from ticket sales and otherwise earned in connection with the Camporee, including but not limited to the 2019 and 2024 Camporees, into an Andrews bank account.

44. Upon information and belief, Andrews treats deposits from Camporee earnings as loans from CYE and uses such deposits to fund Andrews' day-to-day operations.

45. Upon information and belief, Andrews and CYE have not entered into a written loan agreement with respect to the funds described in paragraphs 43 and 44 above.

46. Upon information and belief, Andrews provides CYE with its Michigan tax exempt number for sales tax purposes, and CYE uses such tax exempt number when making purchases related to the Camporee.

47. Andrews maintains an interactive website located at https:/www/andrews.edu (the "Andrews Website").

48. Upon information and belief, Andrews solicits prospective students who are residents of the State of Tennessee through the Andrews Website and through Andrews representatives who recruit students while such representatives are physically present within the state of Tennessee.

49. Andrews solicits donations from residents of the State of Tennessee via a "Give" link appearing on the first page of the Andrews Website. In order to make a gift to Andrews through the Website, a person must enter his or her email address, phone number, and physical address.

50. Upon information and belief, persons from the state of Tennessee attend Andrews as students.

51. Upon information and belief, persons from the state of Tennessee have made financial gifts to Andrews.

52. Defendant AdventSource maintains an interactive website located at www.adventsource.org ("AdventSource Website").

53. The following language is quoted verbatim from the webpage located at the "About Us" link at the bottom of the AdventSource Website: "Advent*Source* is the official leadership resource center for the Seventh-day Adventist Church in North America. We partner with NAD departments and other ministry-focused organizations to develop, produce, and market targeted leadership resources and services to assist local congregations in fulfilling their mission. We also handle registration for ministry training events across the North American Division."

54. AdventSource sells numerous physical and electronic products via the AdventSource Website. Such products include Pathfinder uniforms, patches and gear. Such products also include infringing works that include Plaintiff's sound recordings that have been shipped in physical form to Tennessee residents and transmitted to Tennessee residents in digital format.

55. AdventSource maintains a warehouse and retail location at its Omaha, Nebraska location.

56. AdventSource does not maintain a warehouse or retail location in Tennessee.

57. Tennessee residents who purchase Pathfinders products and/or physical or digital copies of infringing works embodying Plaintiff's sound recordings must purchase such products from AdventSource by placing an order using the AdventSource website.

58. Persons wishing to purchase products from the AdventSource Website click the "Buy" button and pay for such products by checking out on the "Shopping Cart" page.

59. When persons "check out" at the Shopping Cart page, AdventSource collects site user's shipping addresses and billing information for the purposes of fulfilling orders made on the AdventSource website

60. Persons purchasing digital merchandise from the AdventSource Website must create an account and provide an email address, physical address, and phone number.

61. AdventSource retains usernames and passwords for all accounts created on the AdventSource Website.

62. AdventSource maintains records of all purchases placed through the AdventSource Website.

63. AdventSource has sold infringing works in physical form in the State of Tennessee to Tennessee residents by fulfilling orders placed on the AdventSource Website to Tennessee residents.

64. AdventSource has sold digital files containing infringing works in the State of Tennessee by transmitting digital files to Tennessee residents in fulfillment of orders placed on the AdventSource Website.

65. AdventSource provides links at the bottom of each page of the AdventSource Website to AdventSource social media pages such as Facebook, Instagram, and X (formerly Twitter), which social media pages are available to Tennessee residents.

66. CYE and AdventSource entered into a Memorandum of Understanding signed by AdventSource President Brad Forbes on 12/13/2018 ("AdventSource MOU"). A true and correct copy of the "AdventSource MOU" is attached hereto as Exhibit C.

67. The terms of the "AdventSource MOU" are incorporated into this Amended Complaint as if set forth verbatim herein.

68. Both parties to the AdventSource MOU agreed to use the resources of each organization to create and distribute the 2019 "CHOSEN Camporee" highlight video and a series of daily videos. Plaintiff's sound recordings were synchronized with visual images in such videos and were distributed by AdventSource without Plaintiff's permission and continue to be available for purchase on the website located at adventsource.org. Such videos infringe Plaintiff's registered copyright in the sound recordings that are the subject matter of this lawsuit.

69. Defendant Hope Channel maintains and operates an interactive website located a www.hopechannelinternational.org ("HC Website").

70. According to the HC Website, "Hope Channel is the official global television of the Seventh-day Adventist .Church, offering programs on wholistic Christian living and focusing on faith, health, relationships, and community. Hope Channel began broadcasting in North America in 2003. Today, Hope Channel is a global network almost 80 channels, broadcasting in over 100+ languages."

71. Defendant Hope Channel distributes programing to users across the globe, including but not limited to residents of the State of Tennessee, through device specific digital networks, including but not limited to, Apple Play Store, Google Play Store, and Roku.

72. Like all television/audiovisual networks, Hope Channel relies upon content to attract viewers.

73. Hope Channel has distributed works that infringe upon Plaintiff's sound recordings through its network of programs or applications via the Internet.

74. Hope Channel maintains one full-time employee(s) in the State of Tennessee.

75. Upon information and belief, Hope Channel owns a production facility in Tennessee which produces content for Hope Channel, including but not limited to a program known as "It Is Written".

76. Upon information and belief, Hope Channel, CYE, and the North American Division of the Seventh-day Adventist Church ("NAD") entered into a Memorandum of Understanding dated May 13, 2019 ("Hope Channel MOU"). A true and correct copy of the "Hope Channel MOU" is attached hereto as Exhibit D.

77. The terms of the Hope Channel MOU are incorporated herein by reference as if the contents were stated verbatim herein.

78. The stated purpose of the Hope Channel MOU was to provide the framework regarding the production and broadcasting of the Chosen International Pathfinder Camporee between CYE, Hope Channel, and NAD.

79. Appendix A to the Hope Channel MOU specifies the services, crew and resources that CYE, Hope Channel, and NAD were each to provide in connection with production of the Camporee.

80. Appendix B to the Hope Channel MOU shows that Hope Channel provided the services of Russ Moulder as an audio engineer and Justin Woods as a Jib/Web operator.

81. CYE, Hope Channel and NAD jointly produced programming at the 2019 Camporee, which programming embodies Plaintiff's sound recordings without his permission and thus such programming constitute a portion of the infringing works which are the subject of this lawsuit. Hope Channel distributed such infringing programming through its worldwide network.

82. Hope Channel solicits donations from residents of the State of Tennessee via a "Donate" link appearing on the first page of the Hope Channel Website. In order to make a gift to Hope Channel through the Website, a person must enter his or her email address, phone number, and physical address.

83. Upon information and belief, persons from the state of Tennessee have made financial gifts to Hope Channel. Hope Channel helped produce and used content embodying Plaintiff's sound recordings without permission to attract viewers for the purpose of soliciting donations.

84. Hope Channel provides links at the bottom of each page of the Hope Channel Website to Hope Channel social media pages such as Facebook, Instagram, and X (formerly Twitter), which social media pages are available to Tennessee residents.

## III. FACTS

### A. SITLER'S REGISTERED WORKS

85. Defendant CYE hosts a festival approximately every five years for thousands of Seventh-Day Adventist youth and adults. These festivals are known as the International Pathfinder Camporee. Each Camporee features five 30-40 minute live theatrical performances on consecutive nights. Each live performance features actors lip-synching to sound recordings created by Plaintiff.

86. Plaintiff produced sound recordings ("Recordings") for Defendant CYE's 2019 festival which took place on August 12-17, 2019. The Recordings include dialogue, musical compositions, musical tracks, and music vocals. The Recordings were structured to accommodate the timing of actors and props on and off stage for the 2019 Camporee.

87. Plaintiff and his partner, Andrew Strong, entered into an agreement with CYE dated August 3, 2015 ("Agreement"), to create music, script, and soundtrack for five 30-40 minute live theatrical performances ("Performances"). One Performance was performed each night of the 2019 Camporee. The Agreement provided that "All script and music rights are owned by CYE." See Exhibit A. Plaintiff does not have a copy of the Agreement executed by Ron Whitehead, but Plaintiff performed his obligations under the Agreement, which obligations were accepted by Defendant CYE. Andrew Strong himself did not create the Recordings at issue in this case. Mr. Strong acknowledged that Plaintiff is the "sole owner of 'sound recoding' copyrights" at issue in this case. Attached hereto as Exhibit E is a true and correct copy of a document signed by Mr. Strong to this effect.

88. The Agreement provided that Plaintiff could "sell the 'David Music' starting at the Chosen Camporee, August 12, 2019." Plaintiff manufactured CDs embodying the Recordings and traveled to the 2019 Camporee to sell them at a location he expected to be provided by Defendant CYE. This location included booths for many vendors to sell merchandise at the 2019 Camporee. However, Defendant CYE refused to provide Plaintiff with a booth when he arrived.

89. The Agreement did not contemplate a sale, transfer, assignment, or license of the Recordings to Defendant CYE.

90. Although the Agreement was between Plaintiff and Defendant CYE, Plaintiff was always paid by Defendant Andrews University via checks endorsed by Defendant Andrews University.

91. On September 2, 2019, Plaintiff registered his copyrights in the Recordings with the United States Copyright Office. A true and correct copy of the Certificate of Registration bearing Registration Number SR 854-551 is attached hereto as Exhibit F.

## B. DEFENDANTS DISTRIBUTE AND MODIFY SITLER'S REGISTERED WORKS WITHOUT PERMISSION

92. Defendants have continuously used the Recordings in unauthorized broadcasts, video livestreams, and advertisements on Facebook, YouTube, Vimeo, and other social media platforms to promote ticket sales for the upcoming 2024 Camporee.

93. Defendants have distributed, without Plaintiff's permission and despite his objection, the Performances, which Performances are embodied on unauthorized DVDs, streams, broadcasts, and downloads. The Performances can be accessed on Defendant CYE's website at https://www.camporee.org/about/our-history/2019-chosen/ and can be viewed at https://vimeo.com/adventistyouth. The DVDs are available for purchase on www.adventsource.org. The Recordings were synchronized with visual images on audiovisual reproductions of the Performances in physical and digital form as described herein without Plaintiff''s permission and were distributed as described herein without Plaintiff's permission and in spite of his written demand to cease such unauthorized distribution.

94. At least one representative of Defendants CYE and/or Andrews has used audiovisual reproductions of the Performances (in which the Recordings are synchronized with visual images without Plaintiff's permission and in spite of his written objection) in personal appearances promoting the 2024 International Pathfinders Camporee scheduled to take place in Gillette, Wyoming between the dates of August 5-11, 2024.

95. Defendant CYE (and/or other Defendants and/or third parties acting in concert with CYE) modified the Recordings without Plaintiff's permission after he delivered them to Defendant CYE for use at the 2019 Camporee only by adding a choir, sound effects, and other musical elements. In addition, Defendant CYE modified the Recordings without Plaintiff's permission by separating musical compositions embodied on the Recordings into individual

songs and are now distributing them in audio-only digital and physical form. Defendant CYE translated the Recordings to Portuguese, Spanish, French, Italian, Korean, and Mandarin without Plaintiff's permission. Plaintiff did not authorize Defendant CYE to make such modifications or distribute the Recordings as modified. All such modified Recordings are referred to herein as Unauthorized Derivative Works.

96. Defendants are distributing the Recordings and Unauthorized Derivative Works on a worldwide basis. All are available for digital download on digital service providers such as Amazon Music and Apple Music and streaming on the Camporee website and other music streaming platforms such as Apple Music, Spotify, Amazon Music, and others.

97. Defendants, without permission and over Plaintiff's objection, have willfully infringed on Plaintiff's rights in the Recordings by reproducing, distributing, displaying, and publicly performing the Recordings throughout the United States and the world.

98. Plaintiff, through a letter from counsel dated September 17, 2020, notified Defendant CYE about the infringing conduct described herein and demanded that Defendant CYE cease and desist such infringing conduct. However, Defendants, as of the date of filing this Complaint, continue their infringing activities described above.

99. As a result of Defendants' willful conduct, Plaintiff has sustained substantial injury, loss, and damage to his ownership in the Recordings.

## IV. CAUSES OF ACTION

### A. Copyright Infringement

100. Plaintiff incorporates the allegations set forth in the preceding paragraphs as if the same were fully written herein.

101. The Recordings are original to Plaintiff and are subject to copyright protection under 17 U.S.C. §§ 101 *et seq*.

102. Plaintiff is currently, and at all relevant times has been, the sole owner of all rights, title, and interests in and to the Recordings.

103. By its actions, Defendants have infringed and will continue to infringe on Plaintiff's copyrights. Defendants have, without authorization from or payment to Plaintiff, distributed, reproduced, displayed, and publicly performed the recordings.

104. Defendants' conduct has been, and continues to be, willful and knowing.

105. Because of Defendants' infringing conduct, Plaintiff has sustained and will continue to sustain substantial injury, loss, and damage to his ownership interest in the Recordings.

106. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered actual damages, including but not limited to, lost licensing revenue, lost profits, lost opportunities, loss of goodwill, and lost publicity. Pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to recover his own damages plus Defendants' profits derived from the Recordings.

107. In the alternative, pursuant to 17. U.S.C. § 504(c), Plaintiff is entitled to statutory damages for each willful infringement, as proven, up to the maximum of $150,000 for each infringement. Plaintiff is also entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

108. Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause, Plaintiff irreparable injury that cannot be fully compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a

permanent injunction prohibiting infringement of Plaintiff's Recordings and distribution and use of the Unauthorized Derivative Works.

**B. Breach of Contract**

109. Plaintiff incorporates the allegations set forth in the preceding paragraphs as if the same were fully written herein.

110. Plaintiff and Defendant CYE entered into the Agreement attached hereto as Exhibit A.

111. Defendant CYE's refusal to provide Plaintiff with a booth to sell the Recordings at the 2019 Camporee was a breach of the Agreement.

112. Plaintiff suffered actual damages including lost profits, lost opportunities, loss of goodwill, and lost publicity as a result of Defendant CYE's breach.

## V. PRAYER FOR RELIEF

WHEREFORE, the above premises considered, Plaintiff prays for the following relief:

1. That proper process issue for service upon Defendants;

2. That Defendants be ordered to pay Plaintiff such damages as the trier of fact determines Plaintiff has sustained as a result of Defendants' acts of copyright infringement;

3. That Defendants be ordered to account for all gains, profits and advantages derived by Defendants as a result of their infringing conduct and to pay the same to Plaintiff;

4. In the alternative, that Plaintiff be awarded statutory damages and attorney fees in an amount to be determined by this Court in accordance with the United States Copyright Act;

5. That Defendants be ordered to pay Plaintiff such damages as the trier of fact determines Plaintiff has sustained as a result of Defendants' breach of the Agreement;

6. That this Court permanently enjoin Defendants from using or distributing the Recordings or the Unauthorized Derivative Works in any manner;

7. That this Court award the Plaintiff his costs incurred in the prosecution of this cause; and

8. That Plaintiff be awarded such other relief as this Court determines to be appropriate in law or equity.

Respectfully submitted,

/s/ *Bruce H. Phillips*____________________

Bruce H. Phillips (BPR No. 16499)
Law Office of Bruce H. Phillips, PLLC
7313 Horn Tavern Court
Fairview, Tennessee 37062
Telephone: (615) 294-1082
bruce@brucephillipslaw.com

Stephen W. Jones
Jack Nelson Jones, P.A.
Riverfront Plaza
Little Rock, Arkansas 72202
(501) 707-5520
sjones@jacknelsonjones.com

*Counsel for Plaintiff Brian Sitler*

## CERTIFICATE OF SERVICE

I, Bruce H. Phillips, do hereby certify that I have served a copy of the foregoing via email and U.S. Mail on March 12, 2024 upon the following counsel for Defendants:

*/s/ Raanon Gal*

Raanon Gal (TN Bar No. 023634)
Barnes & Thornburg LLP
3340 Peachtree Rd NE, Suite 2900
Atlanta, Georgia 30326
Tel: (404) 264-4066
Email: rgal@btlaw.com

Jonathan P. Froemel (*pro hac vice*)
Barnes & Thornburg LLP
One N. Wacker Drive, Suite 4400
Chicago, Illinois 60606
Tel: (312) 214-8315
Email: jonathan.froemel@btlaw.com

Jeffrey C. Morgan (*pro hac vice*)
Barnes & Thornburg LLP
3340 Peachtree Rd NE, Suite 2900
Atlanta, Georgia 30326
Tel: (404) 264-4015
Email: jeff.morgan@btlaw.com

*Counsel for Named Defendants*