UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BRIAN SITLER,<br><br>Plaintiff,<br><br>v.<br><br>THE CENTER FOR YOUTH EVANGELISM, INC., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | NO. 3:22-cv-00613<br><br>JUDGE RICHARDSON |

**MEMORANDUM OPINION**

Pending before the Court is the "Consolidated Motion to Dismiss" (Doc. No. 73, "Motion") filed by the Center for Youth Evangelism, Inc. ("CYE"), Andrews University ("Andrews"), Hope Channel International, Inc. ("Hope Channel"), and AdventSource, Inc. ("AdventSource," and collectively with CYE, Andrews, and Hope Channel, "Defendants").[1] Via the Motion, Defendants make several different motions (i.e., motions within the Motion) to dismiss the claims in the amended complaint (Doc. No. 67, "Amended Complaint") of Plaintiff, Brian Sitler. Specifically, the Motion includes a motion to dismiss pursuant to Rule 12(b)(1), a motion to dismiss pursuant to Rule 12(b)(2), a motion to dismiss pursuant to Rule 12(b)(3), and a motion to dismiss pursuant

[1] In their briefing on the Motion, Defendants refer to Andrews, Hope Channel, and AdventSource collectively as the "Jurisdictional Defendants" given that Defendants via the Motion challenge the Court's ability to exercise personal jurisdiction over these particular defendants (but not the Court's ability to exercise personal jurisdiction over CYE). The Court will do likewise herein.

Notably, although the CM/ECF docket sheet, as well as the caption of the Amended Complaint, indicates that Plaintiff is bringing claims against "John Does 1-100," there is otherwise no mention of John Does 1-100 in the Amended Complaint or in the briefing on the Motion. And so, the Court treats Plaintiff as bringing claims against Andrews, Hope Channel, AdventSource, and CYE (i.e., the "Defendants" as the Court has defined that term herein), and not against any other party.

to Rule 12(b)(6).[2] The Motion is supported by a memorandum (Doc. No. 74, "Opening Brief"). The Opening Brief is supported by four exhibits (Doc. Nos. 74-1 – 74-4), each of which constitutes one or more excerpt(s) from the transcript of the deposition of a particular deponent in this action.[3] Plaintiff has filed a response (Doc. No. 84, "Response") in opposition to the Motion. The Response is supported by numerous exhibits (Doc. Nos. 83-1 – 83-6; Doc. Nos. 84-1 – 84-24).[4] Defendants

---

[2] In their briefing on the Motion, Defendants also make requests to transfer all or part of this case to a different district or districts in the alternative to dismissal. (Doc. No. 74 at 36-40). Such alternative request is made as to all Defendants. (*Id.* at 36 ("In the event the Court declines to dismiss any or all of the claims in the Amended Complaint[], Defendants respectfully request that this Court transfer this action to the various judicial districts in which they reside.")). As the Court explains in two footnotes below, such requests will be denied.

[3] In adjudicating some types of motions to dismiss (like motions to dismiss brought pursuant to Rule 12(b)(1) that raise facial challenges to a court's subject-matter jurisdiction or motions to dismiss brought pursuant to Rule 12(b)(6) for failure to state a claim) it is ordinarily improper to consider matters outside of the pleadings—such as deposition transcripts and other forms of evidence (or putative evidence). Here, however, the Court is considering a motion to dismiss brought, at least in part, pursuant to Rule 12(b)(2) and based on a purported lack of personal jurisdiction. In considering such motions, it is sometimes proper for the Court to consider evidence in evaluating whether personal jurisdiction may be exercised. *See e.g., Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (explaining that "[m]otions to dismiss under Rule 12(b)(2) involve burden shifting" and that the "plaintiff must first make a prima facie case, which can be done merely through the complaint," before the burden then shifts to the defendant, "whose motion to dismiss must be properly supported with evidence." (internal citations omitted)); *Concord Music Grp., Inc. v. Anthropic PBC*, 738 F. Supp. 3d 973, 980 (M.D. Tenn. 2024) (noting that it is appropriate to consider, in evaluating a motion to dismiss under Rule 12(b)(2) "averments in the plaintiff's declarations (even if contradicted)").

Finally, and of note to the rest of this memorandum opinion, herein the Court italicizes the phrase "*prima facie*" except when quoting portions of a source that do not italicize this phrase.

[4] One of the exhibits supporting the Response is a so-called "Statement of Facts in Support of Personal Jurisdiction" (Doc. No. 84-1, "SOF") crafted by counsel for Plaintiff. Confusingly, the SOF appears to be, for the most part, a largely (though not entirely) verbatim restatement of the allegations in the first 84 paragraphs of the Amended Complaint, with the addition of certain citations that Plaintiff seemingly thinks supports the Amended Complaint's allegations. The filing of a statement of facts in opposition to a motion to dismiss, like the Motion, is unusual (to say the least) and, more to the point, entirely improper. But Defendants, in their reply (Doc. No. 88) to the Response, do not object either to Plaintiff filing the SOF or to Plaintiff relying on the SOF in his Response. Absent such an objection, the Court will consider the SOF, but it will do so herein solely to the extent such consideration is both (1) helpful (namely to the extent (and only to the extent) that the SOF presents information or argumentation relevant to the personal jurisdiction inquiry—i.e., relevant to the adjudication of Defendants' Rule 12(b)(2) motion) *and* (2) not inconsistent with applicable legal standards. That is not to say that the Court will consider the SOF in the same way that the Court would consider a statement of material facts filed in connection with a motion for summary judgment.

have filed a reply (Doc. No. 88, "Reply") in further support of the Motion. The Reply is supported by an additional six exhibits (Doc. Nos. 88-1 – 88-6), each of which constitutes one or more excerpt(s) from the transcript of the deposition of a particular deponent in this action.[5]

For the reasons stated below, the Motion (Doc. No. 73) will be **GRANTED** to the extent described herein, and each of Plaintiff's claims will be dismissed in their entirety.

## BACKGROUND[6]

Below, the Court reviews the background of this action and the instant Motion. First, the Court provides a brief review of the procedural background underlying this action. Next, the Court reviews the facts alleged in the Amended Complaint. And finally, the Court summarizes Plaintiff's claims in this action as well as the arguments Defendants have raised in the Motion.

### 1. Procedural Background

Plaintiff initiated this action on August 11, 2022, by filing a complaint (Doc. No. 1, "Complaint"). Defendants subsequently filed respective motions (Doc. Nos. 20, 22, 24, 25) that sought, among other things, the dismissal of the claims asserted against them in the Complaint. As relevant here, the motions at Docket Nos. 20, 22, and 24 argued—among other things—that the Court could not exercise personal jurisdiction over some of the Defendants, namely AdventSource, Hope Channel, and Andrews. After the filing of the motions at Docket Nos. 20, 22, 24 and 25,

[5] In a joint status report (Doc. No. 93), the parties stated that "Plaintiff believes there may be a need for supplemental briefing regarding a change in the corporate organization of Defendant Center for Youth Evangelism." (Doc. No. 93 at 2). That status report was filed over two months ago, and Plaintiff has given the Court no indication that supplemental briefing regarding the corporate structure of CYE is forthcoming. Thus, the Court decides the Motion on the papers currently before it.

[6] When citing to a page in a document filed by one of the parties, the Court endeavors to cite to the page number ("Page __ of __") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document. In addition, where the Amended Complaint is cited herein without including a paragraph symbol, the citation is not to a paragraph number but rather to a page that contains the cited content outside the boundaries of any paragraph.

Plaintiff raised the possibility of taking limited jurisdictional discovery. (Doc. No. 32 at 1). The Magistrate Judge subsequently ordered jurisdictional discovery. (Doc. No. 37). Following the conclusion of jurisdictional discovery, Plaintiff filed the Amended Complaint (Doc. No. 67), which is the operative complaint in this action. Defendants then filed their (consolidated) Motion, briefing on which is now complete.

**2. Alleged Facts**[7]

*a. The Parties*

Plaintiff is an individual residing in Chattanooga, Tennessee. (Doc. No. 67 at ¶ 2). Plaintiff "is in the business of creating, writing, composing, producing, and recording music." (*Id.* at ¶ 1).

Andrews is a "nonprofit corporation organized under the law of the State of Michigan," (*id.* at ¶ 5), with its principal place of business in Michigan. (*Id.* at ¶ 6). Andrews is, specifically, "a private university [] started by the Seventh-day Adventist Church and is the flagship university of the Seventh-day Adventist school system." (*Id.* at ¶ 22).

Hope Channel is a "corporation organized under the law of the State of Maryland," (*id.* at ¶ 7), with its principal place of business in Maryland. (*Id.* at ¶ 8). Hope Channel "maintains and operates an interactive website located a[t] www.hopechannelinternational.org ("HC Website")." (*Id.* at ¶ 69). According to the HC Website, "Hope Channel is the official global television of the

---

[7] The facts herein are taken from the Amended Complaint. For purposes of the instant Motion, the facts in the Amended Complaint are accepted as true, except to the extent that they are qualified herein (as, for example, by "Plaintiff alleges") to denote that they are not being taken as true but instead are set forth merely to make clear what a party claims to be true. Throughout this opinion, the Court forgoes any such qualifiers for any fact that it is accepting as true, stating those facts without qualification even though it is aware that any such (alleged) fact ultimately might not prove to be true.

Notably, for reasons that the Court describes below, the Court feels comfortable taking these facts from the Amended Complaint as true for the purposes of Defendants' Rule 12(b)(2) motion, even though the Court has permitted discovery in connection with Defendants' Rule 12(b)(2) motion. Likewise, the Court is accepting these facts as true in connection with Defendants' Rule 12(b)(1) and Rule 12(b)(6) motions.

Of note, although Defendants also brought a Rule 12(b)(3) motion, the Court need not determine what facts, if any, it must consider as true in connection with that particular motion, because (as the Court explains below) the Court ultimately has no need to rule on Defendants' 12(b)(3) motion.

Seventh-day Adventist[] Church, offering programs on wholistic Christian living and focusing on faith, health, relationships, and community. Hope Channel began broadcasting in North America in 2003. Today, Hope Channel is a global network [of] almost 80 channels, broadcasting in over 100+ languages." (*Id.* at ¶ 70 (quoting HC Website)). Hope Channel "distributes programing to users across the globe, including but not limited to residents of the State of Tennessee, through device specific digital networks, including but not limited to, Apple Play Store, Google Play Store, and Roku." (*Id.* at ¶ 71). Additionally, "Hope Channel maintains one full-time employee(s) in the State of Tennessee," (*id.* at ¶ 74), and "owns a production facility in Tennessee which produces content for Hope Channel, including but not limited to a program known as 'It Is Written'." (*Id.* at ¶ 75). Additionally, "Hope Channel solicits donations from residents of the State of Tennessee via a 'Donate' link appearing on the first page of the Hope Channel Website. In order to make a gift to Hope Channel through the Website, a person must enter his or her email address, phone number, and physical address." (*Id.* at ¶ 82).

AdventSource is a "nonprofit corporation organized under the law of the State of Nebraska," (*id.* at ¶ 9), with its principal place of business in Nebraska. (*Id.* at ¶ 10). AdventSource "maintains an interactive website located at www.adventsource.org ("AdventSource Website")." (*Id.* at ¶ 52). The AdventSource Website states that "AdventSource is the official leadership resource center for the Seventh-day Adventist Church in North America. We partner with [the North American Division of the Seventh-day Adventist Church] departments and other ministry-focused organizations to develop, produce, and market targeted leadership resources and services to assist local congregations in fulfilling their mission. We also handle registration for ministry training events across the North American Division." (*Id.* at ¶ 53 (quoting AdventSource Website)). "AdventSource sells numerous physical and electronic products via the AdventSource

Website. Such products include Pathfinder uniforms, patches and gear. Such products also include [allegedly] infringing works that include Plaintiff's sound recordings that have been shipped in physical form to Tennessee residents and transmitted to Tennessee residents in digital format."[8] (*Id.* at ¶ 54). "AdventSource does not maintain a warehouse or retail location in Tennessee," but "Tennessee residents who purchase Pathfinders products and/or physical or digital copies of [allegedly] infringing works embodying Plaintiff's sound recordings must purchase such products from AdventSource by placing an order using the AdventSource website." (*Id.* at ¶¶ 56-57).

CYE is a "nonprofit corporation organized under the laws of the State of Michigan," (*id.* at ¶ 3), with its principal place of business in Michigan. (*Id.* at ¶ 4). CYE "is an organization [that] provides materials and co-ordinates events for the development of Seventh Day Adventist Youths [and that] solicits donations via its official website." (*Id.* at ¶ 17).

In 1979, Andrews established the entity that would become CYE. (*Id.* at ¶ 25). CYE was incorporated in 2009. (*Id.* at ¶ 26). Since its inception, "CYE has been located on the Andrews' campus." (*Id.* at ¶ 25). "CYE occupies office space provided by Andrews on the Andrews campus. CYE does not pay rent to Andrews for such offices. There is no written lease between Andrews and CYE for the use of such space." (*Id.* at ¶ 27). Further, "all persons providing services on behalf of CYE in the production of the 2019 Pathfinders Camporee"—which the Court discusses below—"were Andrews employees [allegedly] as a matter of law," or, alternatively, "Andrews and CYE shares employees with CYE in its day-to-day operations." (*Id.* at ¶ 29). Additionally, (1) "all persons working in CYE day-to-day operations are paid by Andrews from an Andrews bank account using Andrews' funds [and] [s]uch persons receive a W-2 showing Andrews as the

[8] Plaintiff uses the modifier "Pathfinder" here and elsewhere in the Amended Complaint. The Court discerns that the modifier "Pathfinder" means something akin, pertaining, or corresponding to one or more of the Camporee festivals hosted by CYE. The Court discusses those festivals in more detail below.

employer and do not receive a W-2 from CYE" (*id.* at ¶ 30); (2) "Andrews provides human resource services and an employee handbook to persons performing CYE's day-to-day operations" (*id.* at ¶ 31); (3) "Andrews provides health insurance and other employee benefits to persons performing CYE's day-to-day operations" (*id.* at ¶ 32); (4) "Andrews [] provides phone lines and office equipment for persons performing CYE's day-to-day operations" (*id.* at ¶ 33); (5) "Andrews [] provides email addresses at the email suffix 'andrews.edu' for persons performing CYE's day-to-day operations" (*id.* at ¶ 34); (6) "Andrews provides custodial services for CYE" (*id.* at ¶ 35); and (7) "CYE's Board of Trustees is made up of a controlling majority of seats held by Andrews Board Members." (*Id.* at ¶ 36). Likewise, "Andrews prepares consolidated financial statements for itself and its subsidiaries on an annual basis. Andrews commissions an independent audit of such consolidated financial statements." (*Id.* at ¶ 37). Furthermore, "[an] Independent Auditor's Report states that Andrews operates 'The Center for Youth Evangelism' as a wholly-owned subsidiary of Andrews." (*Id.* at ¶ 38 (citing Doc. No. 67-2 at 11)).[9]

*b. Factual Circumstances*[10]

i. <u>The 2019 Camporee</u>

CYE "hosts a festival approximately every five years for thousands of Seventh-Day Adventist youth and adults. These festivals are known as the International Pathfinder Camporee.

[9] This so-called "Independent Auditor's Report" is attached as an exhibit at Docket No. 67-2 to the Amended Complaint. The Independent Auditor's Report contains "Andrews' consolidated statements of financial position as of April 30, 2020 and 2019 and the related consolidated statements of activities, functional expenses and cash flows for the years then ended, and the related notes to the consolidated financial statements." (Doc. No. 67 at ¶ 37).

Plaintiff has advanced further allegations concerning the relationship between CYE and Andrews. The Court has omitted these allegations here for the sake of brevity but will discuss them (as necessary) further below.

[10] The Amended Complaint's allegations are difficult to follow. The Court has done its best to make sense of these allegations below.

Each Camporee features five 30-40 minute live theatrical performances on consecutive nights. Each live performance features actors lip-synching to sound recordings created by Plaintiff." (*Id.* at ¶ 85).

Plaintiff "produced sound recordings ("Recordings") for Defendant CYE's 2019 [Camporee] festival which took place on August 12-17, 2019. The Recordings include dialogue, musical compositions, musical tracks, and music vocals. The Recordings were structured to accommodate the timing of actors and props on and off stage for the 2019 Camporee." (*Id.* at ¶ 86).[11]

"Plaintiff and [Plaintiff's business] partner, Andrew Strong ["Strong"] entered into an agreement with CYE dated August 3, 2015 ("Agreement") to create music, script, and sound recordings [which comprise some or all of the Recordings] for five 30-40 minute live theatrical performances ("Performances") [to be put on at the 2019 Camporee]." (Doc. No. 67 at ¶¶ 18, 87).[12] "The Agreement provided that Plaintiff could 'sell the 'David Music' starting at the [] [2019] Camporee.'" (*Id.* at ¶ 88).[13] Although "the Agreement was between Plaintiff and Defendant CYE,

---

[11] Of note, Strong "did not create the Recordings at issue in this case" and "Strong acknowledged that Plaintiff is the 'sole owner of "sound recording" copyrights' at issue in this case." (*Id.* at ¶ 87). Filed at Docket No. 67-5 as an exhibit to the Amended Complaint is a copy of a document whereby Strong seems to acknowledge Plaintiff's rights in the Recordings.

[12] A copy of the Agreement is filed at Docket No. 67-1 as an exhibit to the Amended Complaint. Notably, the copy of the Agreement indicates that the Agreement was entered into between CYE, Sitler, Strong, and an entity called "Sitler and Strong Productions" ("SSP"). Contrary to the allegations in the Amended Complaint, the Agreement reflects, as far as the Court can tell, that the obligations imposed (and benefits granted) via the Agreement actually ran only to SSP and CYE, and not also to Strong and Sitler individually. Ultimately, however, the issue of who owed or was owed what obligations under the Agreement is immaterial to the Court's analysis of the instant Motion, as will become clear below.

[13] The Amended Complaint does not define or otherwise explain what "David Music" is. A review of the copy of the Agreement suggests that "David Music" refers to (at least some of and perhaps all of) the content that makes up the Recordings. (Doc. No. 67-1 at 1 ("The agreement is between [CYE] and [SSP], Andrew Strong and Brian Sitler for a musical drama, "David," for the Chosen International Camporee, August 12-17, 2029."); 2 ("SSP may sell the 'David Music' starting at the Chosen Camporee, August 12, 2019. September 1, 2020, the music will be available free, online.")).

Plaintiff was always paid by Defendant Andrews University via checks [signed] by Defendant Andrews University." (*Id.* at ¶ 90; *see also id.* at ¶ 24 ("Plaintiff was paid for his services in connection with the Agreement by check drafted on an Andrews bank account. Andrews sent Plaintiff an IRS 1099 tax form for such payment.")). "Plaintiff manufactured CDs embodying the Recordings and traveled to the 2019 Camporee to sell them at a location he expected to be provided by Defendant CYE. This location included booths for many vendors to sell merchandise at the 2019 Camporee. However, Defendant CYE refused to provide Plaintiff with a booth [to sell the CDs containing the Recordings] when he arrived [at the 2019 Camporee]." (*Id.* at ¶ 88).[14]

ii. The Copyright

"On September 2, 2019, Plaintiff registered [] copyrights [that he claimed] in the Recordings with the United States Copyright Office." (*Id.* at ¶ 91).[15] "Defendants have [] used the Recordings in [allegedly] unauthorized broadcasts, video livestreams, and advertisements on Facebook, YouTube, Vimeo, and other social media platforms to promote ticket sales for the upcoming 2024 Camporee." (*Id.* at ¶ 92).

Indeed, CYE and AdventSource "entered into a Memorandum of Understanding signed by AdventSource President Brad Forbes on 12/13/2018 ("AdventSource MOU")." (*Id.* at ¶ 66).[16] "Both parties to the AdventSource MOU agreed to use the resources of each organization to create and distribute the 2019 'CHOSEN Camporee' highlight video and a series of daily videos. Plaintiff's sound recordings [i.e., the Recordings] were synchronized with visual images in such

[14] Neither the Amended Complaint nor briefing on the Motion indicates where the 2019 Camporee took place.

[15] A copy of the Certificate of Registrations of the Recordings is filed at Docket No. 67-6 as an exhibit to the Amended Complaint.

[16] A copy of the AdventSource MOU is filed at Docket No. 67-3 as an exhibit to the Amended Complaint.

videos and were distributed by AdventSource without Plaintiff's permission and continue to be available for purchase on the website located at adventsource.org," and "[s]uch videos [allegedly] infringe Plaintiff's registered copyright in the sound recordings that are the subject matter of this lawsuit [i.e., the Recordings]." (*Id.* at ¶ 68).

Further, "Hope Channel, CYE, and the North American Division of the Seventh-day Adventist Church ("NAD") entered into a Memorandum of Understanding dated May 13, 2019 ("Hope Channel MOU")."[17] (*Id.* at ¶ 76). "The stated purpose of the Hope Channel MOU was to provide the framework regarding the production and broadcasting of the [2019] Camporee between CYE, Hope Channel, and NAD." (*Id.* at ¶ 78).[18] "[Pursuant (as far as the Court can tell) to the Hope Channel MOU,] CYE, Hope Channel and NAD jointly produced programming at the 2019 Camporee, which programming embodies [the Recordings] without his permission and thus such programming constitute[s] a portion of the [allegedly] infringing works which are the subject of this lawsuit." (*Id.* at ¶ 81).

Ultimately, Plaintiff, "through a letter from counsel dated September 17, 2020, notified [] CYE about the [allegedly] infringing conduct described herein and demanded that [] CYE cease and desist such [allegedly] infringing conduct. However, Defendants [] continue their [allegedly] infringing activities." (*Id.* at ¶ 98).

---

[17] A copy of the Hope Channel MOU is filed at Docket No. 67-4 as an exhibit to the Amended Complaint.

[18] The allegation in paragraph 78 states in full: "The stated purpose of the Hope Channel MOU was to provide the framework regarding the production and broadcasting of the Chosen International Pathfinder Camporee between CYE, Hope Channel, and NAD." (Doc. No. 67 at ¶ 78). The Court discerns that when Plaintiff discusses the "Chosen International Pathfinder Camporee" in this allegation, he is discussing the *2019* Camporee, which the Court has already discussed herein, and not some other year's Camporee.

### 3. Plaintiff's Claims and the Motion

#### *a. Plaintiff's Claims*

Based on the foregoing, Plaintiff brings two claims.

His first claim ("Claim I") is a claim for copyright infringement against all Defendants. Via Claim I, Plaintiff alleges that "[t]he Recordings are original to Plaintiff and are subject to copyright protection under 17 U.S.C. §§ 101 *et seq.*[,]" (Doc. No. 67 at ¶ 101), and that "Plaintiff is currently, and at all relevant times has been, the sole owner of all rights, title, and interests in and to the Recordings." (*Id.* at ¶ 102). Plaintiff also alleges that "[b]y [their] actions, Defendants have infringed and will continue to infringe on Plaintiff's copyrights. Defendants have, without authorization from or payment to Plaintiff, distributed, reproduced, displayed, and publicly performed the [R]ecordings," (*id.* at ¶ 103), and that "[b]ecause of Defendants' infringing conduct, Plaintiff has sustained and will continue to sustain substantial injury, loss, and damage to his ownership interest in the Recordings." (*Id.* at ¶ 105).

His second claim ("Claim II") is a breach-of-contract claim solely against CYE. Via Claim II, Plaintiff alleges that CYE breached the Agreement when it refused "to provide Plaintiff with a booth to sell the Recordings at the 2019 Camporee[]." (*Id.* at ¶ 111).

#### *b. The Motion*

Via the Motion, Plaintiffs move for dismissal pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6). That is to say, the Motion—far from constituting in substance a single Motion—actually includes several different types of motions to dismiss, as the Court noted above.

With respect to their Rule 12(b)(2) motion, Defendants argue that the Court lacks personal jurisdiction (in either its general or specific forms) over the Jurisdictional Defendants (i.e., over Andrews, AdventSource, and Hope Channel) and that the claims against those defendants should

be dismissed accordingly. (Doc. No. 74 at 15-27). With respect to their Rule 12(b)(3) motion, Defendants argue that dismissal of the Jurisdictional Defendants is warranted because (according to Defendants) venue is improper as to the Jurisdictional Defendants. (*Id.* at 27-28). With respect to Defendants' Rule 12(b)(1) motion, Defendants argue that Plaintiff lacks standing to bring Claim II (the breach of contract claim) against CYE (the sole defendant on Claim II), and thus that the Court lacks subject-matter jurisdiction over Claim II.[19] (Doc. No. 74 at 28-29). Finally, with respect to Defendants' Rule 12(b)(6) motion—the Motion's sole merits-based motion—Defendants assert that Plaintiff fails to state a claim against any defendant. (Doc. No. 74 at 29-36).[20]

## LEGAL STANDARD

Given the nature of Defendants' arguments, the Court sets forth below the legal standards applicable to dismissal under Rules 12(b)(1), 12(b)(2) and 12(b)(6).[21]

### 1. Rule 12(b)(1)

Rule 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "Subject matter jurisdiction is always a threshold determination." *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007).

[19] As the Court explains below, standing is a matter of the Court's subject-matter jurisdiction.

[20] Defendants make this argument effectively in the alternative to their jurisdictional and venue arguments. (Doc. No. 74 at 30 ("Even assuming Sitler has standing to bring a breach of contract claim, and that the Amended Complaint makes a prima facie showing that this Court has personal jurisdiction over the Jurisdictional Defendants, the Amended Complaint still fails to state a claim upon which relief could be granted, and the claims against all Defendants should be dismissed pursuant to Fed. R. Civ. P. 8 and 12(b)(6).")).

[21] The Court declines to discusses the standard for dismissal under Rule 12(b)(3) because, for the reasons described below, the Court declines to address the merits of Defendants' arguments that dismissal is warranted pursuant to Rule 12(b)(3).

Motions to dismiss under Rule 12(b)(1) are categorized as either facial or factual attacks. *Gentek Bldg. Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). A facial attack challenges the sufficiency of the complaint's allegations, requiring the district court to take the allegations as true. *Id.* If the complaint establishes federally cognizable claims, jurisdiction exists. *Id.* A factual attack, by contrast, raises a factual controversy regarding whether subject-matter jurisdiction exists, and no presumptive truthfulness applies to the complaint's allegations when a court resolves a factual attack. *Id.* In such cases, the court may weigh conflicting evidence, including affidavits, and documents, or even conduct a limited evidentiary hearing, to determine the factual predicate for jurisdiction. *Id.*; *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003). Here, the Court is faced with a facial attack on its subject-matter jurisdiction.[22]

That raises the question of what documents or filings (if any) the Court may consider outside of the Amended Complaint in resolving these facial attacks. As the undersigned just recently observed, in considering a motion to dismiss that brought a facial attack under Rule 12(b)(1), the Court "may consider the [complaint] and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the [motion to dismiss] so long as they are referred to in the [complaint] and are central to the claims contained therein." *City of Murfreesboro, Tenn., v. BFI Waste Systems of Tenn.*, LLC, No. 3:22-CV-00605, 2026 WL 2807005, at *6 (M.D. Tenn. Sept. 18, 2026).

---

[22] The Motion (and the briefing thereon) is inexact as to whether Defendants are bringing a facial challenge or a factual challenge to the Court's subject-matter jurisdiction. Nevertheless, based on a review of the briefing on the Motion, the Court concludes that Defendants are bringing a facial challenge to the Court's subject-matter jurisdiction. The Court so concludes because Defendants, in making their challenge to subject-matter jurisdiction (i.e., in arguing that Plaintiff lacks standing to bring Claim II), rely solely on the Amended Complaint and the exhibits thereto.

**2. Rule 12(b)(2)**

A plaintiff bears the burden of establishing personal jurisdiction. *Elcan v. FP Assocs. LTD*, Case No. 3:19-cv-01146, 2020 WL 2769993, at *3 (M.D. Tenn. May 28, 2020); *Ever-Seal, Inc. v. DuraSeal, Inc.*, No. 3:22-CV-00365, 2022 WL 3599519, at *6 (M.D. Tenn. Aug. 23, 2022). On a 12(b)(2) motion to dismiss, district courts have discretion to either decide the motion on affidavits alone, permit discovery on the issue, or conduct an evidentiary hearing. *Elcan* 2020 WL 2769993 at *3 (citing Se*e, Inc. v. Imago Eyewear Pty., Ltd.*, 167 F. App'x 518, 520 (6th Cir. 2006) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991))).

The extent of a plaintiff's burden to establish personal jurisdiction is determined by "the method the court chooses to decide the motion." *Providers Access & Saving Sys., Inc. v. The Regence Grp., Inc.*, No. 06-15367, 2007 WL 1106145, at *1 (E.D. Mich. Apr. 12, 2007). Where a court resolves the motion based on "'written submissions alone,' the plaintiff need only make a prima facie showing of personal jurisdiction, and a plaintiff can make this showing 'merely through the complaint.'" *Lewis v. Sole L., PLLC*, No. 1:21-CV-12846, 2022 WL 3337137, at *2 (E.D. Mich. June 22, 2022) (quoting *Schnieder v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012)), *report and recommendation adopted,* 629 F. Supp. 3d 731 (E.D. Mich. 2022), *aff'd,* No. 22-1918, 2023 WL 11018147 (6th Cir. Nov. 17, 2023). In examining whether a plaintiff has made its *prima facie* showing of personal jurisdiction, "the Court is to construe the facts presented in the light most favorable to the plaintiff, and the Court does not weigh or consider the conflicting facts presented by the other side." *Zahner Hansen Const. Grp., Inc. v. Hotwire Elec., Inc.*, No. 3-14-1067, 2014 WL 2872212, at *2 (M.D. Tenn. June 24, 2014). Put another way, and as this Court put it not so long ago:

> In considering whether the plaintiff has satisfied its prima facie burden, the Court may accept as true the: (1) allegations in the Complaint that "are uncontroverted by

> the defendant-movant," (2) "averments in the plaintiff's declarations (even if contradicted)," and (3) "defendant's undisputed factual assertions." *See Ncontracts LLC. v. Holmberg*, 2022 WL 17724148, at *3 (M.D. Tenn. Dec. 15, 2022) (summarizing applicable standards of review). The Court must view the above-referenced "pleadings and affidavits in a light most favorable to the plaintiff and not weigh the controverting assertions of the party seeking dismissal." *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 437 (6th Cir. 2022) (citation and internal quotation marks omitted). Dismissal is appropriate only if these facts collectively fail to state a prima facie case for jurisdiction. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

*Concord Music Grp., Inc. v. Anthropic PBC*, 738 F. Supp. 3d 973, 980 (M.D. Tenn. 2024) (Crenshaw, J.). In other words, dismissal due to the plaintiff failing to make a *prima facie* case of personal jurisdiction is appropriate "only . . . if all of the specific facts [a plaintiff] alleged collectively fail[] to state a *prima facie* case for jurisdiction under the appropriate standards." *Theunissen*, 935 F.2d at 1459.

On the other hand, if a court elects to conduct an evidentiary hearing "it must then employ a burden shifting framework which takes the defendant's factual allegations into consideration." *Lewis*, 2022 WL 3337137, at *2 (citing *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504-05 (6th Cir. 2020)). *Cf. Helferich v. GlyMed Plus, L.L.C.*, 790 F. Supp. 3d 582, 597-98 (E.D. Mich. 2025 (resolving a 12(b)(2) motion "on written submissions alone," declining to engage in burden shifting after plaintiff made her *prima facie* showing of personal jurisdiction, and implying that burden shifting would have taken place if the court had conducted an evidentiary hearing or allowed discovery). Under the burden-shifting framework, the plaintiff must still make its *prima facie* showing of personal jurisdiction. *Lewis*, 2022 WL 3337137, at *2 (citing *Malone*, 965 F.3d at 504-05). However, if a plaintiff makes its *prima facie* showing of personal jurisdiction, then "[t]he burden [] shifts to the defendant, whose motion to dismiss must be properly supported with evidence." *Malone*, 965 F.3d at 504 (citing *Theunissen*, 935 F.2d at 1458). If a defendant meets its

burden to file a motion to dismiss properly supported by evidence,[23] then the burden returns to the plaintiff who "must overcome [the motion] by a preponderance of the evidence." *Id.* at 505 (citing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998)). That is to say, even where a court holds an evidentiary hearing, the plaintiff still *must* make a *prima facie* showing of personal jurisdiction (even if the plaintiff *later* must establish personal jurisdiction under a higher standard, i.e., preponderance of the evidence).

Here, the Court chose a middle ground—permitting discovery but, as should be evident from the discussion herein, electing not to hold an evidentiary hearing. "The burden when the Court allows discovery, but does not conduct an evidentiary hearing, is unclear." *Slay v. IB*

---

[23] Notably, the Sixth Circuit has repeatedly indicated that a defendant's burden in this context is merely a burden to support its motion to dismiss with evidence. *See Malone*, 965 F.3d at 504 ("The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence."); *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 437 (6th Cir. 2022) ("A motion to dismiss under Rule 12(b)(2) involves burden shifting: after the plaintiff makes a prima facie case for personal jurisdiction, which can be done 'merely through the complaint,' the burden shifts to the defendant. The defendant's motion to dismiss must be supported by evidence." (internal citations omitted)); *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 660 (6th Cir. 2023) ("When the burden shifts to the defendant, its 'motion to dismiss must be supported by evidence.'"). And district courts in this Circuit have adopted the Sixth Circuit's framing as to a defendant's burden in this context. *See e.g., Helferich*, 790 F. Supp. 3d at 590 ("If the court holds an evidentiary hearing and the defendant's motion is properly supported with evidence, the plaintiff must overcome it by a preponderance of the evidence."); *Hardwick v. 3M Co.*, No. 2:18-CV-1185, 2020 WL 4436347, at *5 (S.D. Ohio Aug. 3, 2020) ("If the court holds an evidentiary hearing and the defendant's motion is properly supported with evidence, the plaintiff must overcome it by a preponderance of the evidence.").

However, the Court perceives that it cannot possibly be true that a defendant discharges its burden merely by filing *a* 12(b)(2) motion to dismiss supported by *some* "evidence." If that *were* true then a defendant, merely by filing a motion to dismiss supported by an affidavit (which is a form of "evidence," even if in context it is worthless evidence) that stated solely "there is no personal jurisdiction," could then require a plaintiff to show personal jurisdiction exists by a preponderance of the evidence. Rather, the Court suspects that a defendant's burden in this context must be (1) to file a motion that is supported by evidence and (2) to present evidence that to some material degree contravenes a plaintiff's *prima facie* showing of personal jurisdiction.

Ultimately, the Court in this case need not determine precisely what a defendant's burden is in this context—i.e., what degree of contravention a defendant must show evidentially—given that the Court finds that Plaintiff has not made the required *prima facie* showing of personal jurisdiction. And so, in the body of this memorandum opinion, the Court will refer to a defendant's burden in this context in the same way that the Sixth Circuit has, namely as a burden to support its motion to dismiss with evidence.

*Travelin, Inc.*, No. 218CV02728SHMTMP, 2021 WL 2144333, at *3 (W.D. Tenn. May 26, 2021). As this Court has noted:

> It is unclear whether the preponderance-of-the-evidence standard applies, as in this case, when some discovery has been conducted but an evidentiary hearing has not been held (or requested). In *Schneider v. Hardesty,* 669 F.3d 693, 697-699 (6th Cir. 2012), the court recognized the appropriate standard to apply in this situation is an open question, and ultimately declined to decide the issue because the plaintiff had established personal jurisdiction under the more-onerous standard. *Id.,* at 699. The court suggested, however, that the preponderance-of-the-evidence standard should not apply when the plaintiff obtained less than the full discovery requested, or the facts are in dispute. *Id.,* at 698-99. The court also noted that prior decisions had applied the *prima facie* standard in cases where limited discovery was conducted but no evidentiary hearing was held. *Id.,* at 698 n.6 (citing *Bridgeport Music, Inc. v. Still N The Water Publ'g,* 327 F.3d 472, 476-78 (6th Cir. 2003)).

*Scott v. White*, 539 F. Supp. 3d 831, 838 (M.D. Tenn. 2021) (Campbell, C.J.).

Here, the Court need not decide whether, in a case (like the instant case) where some discovery has been permitted but no evidentiary hearing has been (or will be) held, a plaintiff must (at least potentially) do more than make a *prima facie* showing of personal jurisdiction—i.e., must show, if and when it makes its required *prima facie* showing of personal jurisdiction and if faced with a properly supported motion to dismiss—must overcome that motion by a preponderance of the evidence. That is because for the reasons discussed below, the Court concludes that Plaintiff has failed to make a *prima facie* showing of personal jurisdiction as to the Jurisdictional Defendants and so there is no need for the Court to determine whether Plaintiff bears any potential preponderance-of-the evidence burden (and, if so, whether Defendants have shifted that burden to Plaintiff and, if so, whether Plaintiff has met that resulting burden). And the Court's approach here, to first examine, before engaging in any other inquiry, whether Plaintiff has made its required *prima facie* showing, is supported by Sixth Circuit precedent. As the Sixth Circuit has explained,

"whether discovery is permitted or not, the initial burden is on the plaintiff to make at least a prima facie showing of jurisdiction." *Malone*, 965 F.3d at 502 (citing *Theunissen*, 935 F.3d at 1458).[24]

**3. Rule 12(b)(6)**

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.* at 678; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendants' liability do not satisfy

---

[24] The Court accepts the Amended Complaint's factual allegations as true in the context of Defendants' Rule 12(b)(2) motion because the Court has limited its analysis on the question of personal jurisdiction to the question of whether Plaintiff has made a *prima facie* showing of personal jurisdiction. In these circumstances, as noted above, the Court may accept as true the "the allegations in the Complaint that 'are uncontroverted by the defendant-movant[.]'" *Anthropic PBC*, 738 F. Supp. 3d at 980. And here, it is clear that for the purposes at least of Plaintiff's *prima facie* showing of personal jurisdiction, Defendants do not attempt to controvert (or otherwise dispute) the factual allegations in the Amended Complaint. (Doc. No. 74 at 17 n.3 ("Here, the Jurisdictional Defendants believe that the Amended Complaint fails to make the required *prima facie* showing, and thus can be dismissed without the need for the consideration of facts outside of its four corners.")). Likewise, because "[a]ttachments to a complaint are treated as part of the complaint," *Tucker v. Serpas*, No. 3:08-00522, 2010 WL 883813, at *2 (M.D. Tenn. Mar. 11, 2010), the Court discern no fault in considering the attachments to the Amended Complaint in the Court's evaluation of Defendants' Rule 12(b)(2) motion.

the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

Of note, Fed. Rule of Civ. P. 12(d) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." However, there is an exception to this Rule: "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). *See also Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016) ("when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary

judgment." (quoting *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007))); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018) ("Documents attached to the motion to dismiss briefing may be considered part of the pleadings if they were incorporated into the complaint by reference and are central to the plaintiff's claim.").

## DISCUSSION

"[F]ederal courts generally must decide jurisdictional issues before considering merits issues." *Jones v. Sexton*, No. 3:23-CV-01033, 2025 WL 3000203, at *9 (M.D. Tenn. Oct. 24, 2025). However, when presented with pending challenges to both its subject-matter jurisdiction and its personal jurisdiction (as the Court is here via the Motion), the Court may resolve such challenges in either order. *Id. See also Jordan-Sodiq v. Soc. Sec. Admin.*, No. 3:25-CV-00288, 2025 WL 3091145, at *4 n.4 (M.D. Tenn. Nov. 4, 2025) ("The Court may resolve questions of personal jurisdiction before determining whether subject-matter jurisdiction exists."). Here, following the sequencing of the briefing in the Opening Brief, the Court begins with Defendants' Rule 12(b)(2) motion, analyzing whether the Court may exercise personal jurisdiction over the Jurisdictional Defendants. The Court then considers Defendants' Rule 12(b)(1) motion, analyzing Plaintiff's standing to bring Claim II against CYE (the only party against whom Claim II is brought).

Only after addressing these threshold jurisdictional arguments (and motions) will the Court address—to the extent necessary—the bases for dismissal that Defendants have advanced pursuant to Rule 12(b)(3) and Rule 12(b)(6).

### 1. Defendants' Rule 12(b)(2) Motion

That takes the Court to Defendants' Rule 12(b)(2) motion. As an initial matter, the Court discusses a few principles regarding personal jurisdiction. Then the Court analyzes the arguments raised by the parties as to personal jurisdiction.

#### *a. Personal Jurisdiction Generally*

In cases (like the instant case) "where a federal court has federal question jurisdiction (as in this copyright case), personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process."[25] *Unidisc Music, Inc. v. Antibemusic S. r. l.*, No. 3-13-1451, 2014 WL 2573974, at *1 n.1 (M.D. Tenn. June 9, 2014). "Tennessee's long-arm statute . . . provides that a Tennessee court may exercise jurisdiction over an out-of-state defendant on '[a]ny basis not inconsistent with the constitution of this state or of the United States.'" *Simplex Healthcare, Inc. v. Marketlinkx Direct, Inc.*, 761 F. Supp. 2d 726, 729 (M.D. Tenn. 2011) (quoting Tenn. Code Ann. § 20–2–214(6)). "Accordingly, the long-arm statute has been consistently construed to extend to the limits of federal due process." *Id.* (citing *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 645 (Tenn. 2009); and *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003)). "Where a state's long-arm statute extends to the limits of the Due Process Clause, the two inquiries merge, and the court need only determine whether exercising personal jurisdiction violates [the defendant]'s due process rights." *Env't 360, Inc. v. Walker*, 713 F. Supp. 3d 442, 446 (M.D. Tenn. 2024) (quoting *Pearl Recs., Inc. v. Conner*, No. 3:22-CV-00096, 2023 WL 351203, at *3 (M.D. Tenn. Jan. 20, 2023)).

---

[25] Jurisdiction in this case is premised on both 28 U.S.C. § 1331 (which provides federal-question jurisdiction) and 28 U.S.C. § 1338 (which grants district courts original and exclusive jurisdiction over copyright claims). (Doc. No. 67 at ¶ 11).

Personal jurisdiction comes in two forms: general and specific. *Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017). General jurisdiction, which is not implicated here,[26] allows a plaintiff to sue a defendant on a claim regardless of the connection between the claim and the forum. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

In contrast, for specific personal jurisdiction (which is implicated here) to exist a plaintiff's claim(s) must arise out of or relate to the defendant's contacts with the forum—principally an activity or occurrence that takes place in the forum state. *Bristol-Myers*, 582 U.S. at 262. Under the constitutional due process analysis, for specific personal jurisdiction to exist: (1) the defendant must purposefully avail itself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3)

---

[26] Defendants assert in their Opening Brief that there is no general personal jurisdiction over the Jurisdictional Defendants. (Doc. No. 74 at 17-18). Plaintiff does not dispute this assertion in his Response (Doc. No. 84). And in his SOF, Plaintiff addresses general personal jurisdiction in only the most conclusory and perfunctory manner, mainly by repeating verbatim the Amended Complaint's legal conclusions regarding general personal jurisdiction. (Doc. No. 84-1 at ¶ 12 ("This Court has both general and specific personal jurisdiction over Defendants, who have had substantial, continuous, and systematic contacts with Tennessee that approximate physical presence in this State.")).

And so, the Court treats Plaintiff as conceding the absence of general personal jurisdiction over the Jurisdictional Defendants and will focus its analysis below exclusively on the issue of specific personal jurisdiction. The Court's decision to take this approach is consistent with case law from district courts in this Circuit. *See e.g., Sherman v. Biglari*, No. 1:18CV2887, 2020 WL 3000452, at *9 (N.D. Ohio June 4, 2020) ("Although provided numerous opportunities to do so, Plaintiff does not substantively address or oppose Defendants' arguments regarding general jurisdiction and, instead, limits her argument to the issue of specific personal jurisdiction. Thus, and in the absence of any meaningful opposition, the Court finds that general jurisdiction does not exist and will limit its analysis to the question of whether Plaintiff has made a *prima facie* showing of specific jurisdiction over Defendants." (footnote omitted)); *Mosure v. Sw. Airlines, Co.*, No. 4:23-CV-1121, 2023 WL 6199762, at *5 (N.D. Ohio Sept. 22, 2023) ("By failing to address [the defendant's] arguments relative to general jurisdiction—and limiting their discussion to specific jurisdiction—plaintiffs have waived any argument that general jurisdiction exists in this matter."); *800537 Ontario Inc. v. Auto Enters., Inc.*, 113 F. Supp. 2d 1116, 1124 n.6 (E.D. Mich. 2000) ("[B]ecause Plaintiffs' responses are completely devoid of any statements that can reasonably be construed as an argument that this Court has general personal jurisdiction over [particular] Defendants, the issue of general personal jurisdiction shall not be addressed by the Court.").

the acts of the defendant or consequences caused by the defendant must have a connection with the forum state substantial enough to make the exercise of personal jurisdiction over the defendant reasonable. *Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016) (quoting *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)); *TailGate Beer, LLC v. Boulevard Brewing Co.*, No. 3:18-CV-00563, 2019 WL 2366948, at *2 (M.D. Tenn. June 5, 2019) (same).

Notably, the plaintiff bears the burden only on the first two of these prongs. "If a court finds that the plaintiff has established the first two prongs of the specific-jurisdiction inquiry, the burden shifts to the defendant to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Santoni v. Mueller*, No. 3:20-CV-00975, 2022 WL 97049, at *6 (M.D. Tenn. Jan. 10, 2022) (citing *TailGate Beer*, 2019 WL 2366948 at *6). If the plaintiff satisfies the first two prongs, then "an inference of reasonableness arises' and 'only the unusual case will not meet this third criteria.'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 554 (6th Cir. 2007) (quoting *Theunissen*, 935 F.2d at 1461). "In determining reasonableness, [courts] examine three factors: (1) the burden on the defendant; (2) the forum state's interest; and (3) the plaintiff's interest in obtaining relief." *Bulso v. O'Shea*, 730 F. App'x 347, 351 (6th Cir. 2018).

*b. Specific Personal Jurisdiction over the Jurisdictional Defendants*

The Court now turns to the arguments raised by the parties as to specific personal jurisdiction. As noted above, Defendants argue that Plaintiff has not made a *prima facie* showing that the Court has personal jurisdiction over the Jurisdictional Defendants. Here, as noted in a footnote above, the question of whether the Court has personal jurisdiction over the Jurisdictional Defendants hinges on whether the Court has *specific* personal jurisdiction over the Jurisdictional Defendants. With respect to specific personal jurisdiction in particular, Defendants argue—among other things—that Plaintiff has not made his required *prima facie* showing as to the second prong (i.e., the "arise out of" prong)[27] of the specific personal-jurisdiction due process analysis. Defendants argue on this point:

> Specific personal jurisdiction exists only when a plaintiff's cause of action arises from a defendant's contacts with the forum state, and a cause of action can only arise from those contacts when there is a "substantial connection" between a plaintiff's claims and the defendant's forum state activities. *Tharo Sys., Inc. v. Cab Produkttechnik GMBH & Co. KG*, 196 F. App'x 366, 371 (6th Cir. 2006) (a substantial connection exists "where a defendant's contacts with the forum state are related to the operative facts of the controversy.") (internal citation omitted). Thus even if Sitler could make a *prima facie* showing of purposeful availment, he does not allege there is a substantial connection between his claims and the Jurisdictional Defendants['] contacts with Tennessee.
>
> For example, the Amended Complaint does not allege any of Sitler's causes of action "arise from" Andrew's alleged recruitment of students in Tennessee, or any of the Jurisdictional Defendants' solicitation of donations. Similarly, none of Sitler's claims concern Hope Channel's unidentified employee in Tennessee or its purported ownership of a production facility in the state. Put simply, the Amended Complaint does not make a prima facie showing (and certainly cannot demonstrate by a preponderance of the evidence) that an unidentified employee, alleged Tennessee based donations, or Tennessee residents attending Andrews have anything to do—much less have a "substantial connection["] —with Sitler's breach of contract or copyright infringement claims.
>
> The Amended Complaint also alleges the sale and distribution of the Recordings and derivative works in Tennessee. While this conduct at least has some

[27] Herein, the Court uses the phrases "'arise out of' prong" and "'arise from' prong" synonymously to refer to the second prong of the specific personal-jurisdiction due process analysis.

> tenuous connection to Tennessee, courts have concluded that mere allegations of the sale or distribution of copyrighted works in a state, without more, is not enough to give rise to specific jurisdiction. *See Bulwer v. Mass. College of Pharm. & Health Scis.*, No. 1:13-CV-521, 2014 WL 3818689, at *13 (D. N.H., Aug. 4 2014). In *Bulwer*, the court found the plaintiff failed to "satisfy the relatedness prong of the specific jurisdiction analysis" because his copyright claims "would have arisen regardless of the" alleged distribution of the copyrighted works in the proposed forum state, and as such "those contacts do not form an important or material element of proof in [plaintiff's] case." *Id.* The same is true here. Sitler does not allege that the Jurisdictional Defendants['] distribution of the Recordings in Tennessee formed a substantial part of their worldwide distribution, or that Tennessee was a particular focus of their efforts. Instead, the Jurisdictional Defendants['] alleged distribution of the Recordings in Tennessee are, at most, *de-minimis* and do not form an "important or material" element of Sitler's claims. Therefore, those claims do not "arise from" the Jurisdictional Defendant's contacts with Tennessee. *Id.* Other courts have reached similar conclusions. *See Coastal Video Communs. Corp. v. Staywell Corp.*, 59 F. Supp. 2d 562, 568 (E.D. Va. 1999) (in a declaratory judgement action holding that "[e]ven if plaintiff was able to demonstrate" sales of copyrighted works in the forum "the court would still not have specific, personal jurisdiction over defendant because the declaratory judgment action currently before the court does not 'arise from' the sale of" the copyrighted work); *Overton v. Vanzant*, No. 01-624, 2001 WL 1911359 , at *6 (D. Ore. Dec. 13, 2001) (even where a defendant "knew that the [copyrighted work] would be offered for sale in" the proposed forum state and indirectly benefited from those sales specific jurisdiction did not exist because defendant "herself did not engage in any intentional, independent act to avail herself of the opportunity to business in the [forum state]."); *Mielcarek v. Jackson*, No. 2:11-CV 00255, 2012 WL 4757830, at *6 (S.D. Ohio Oct. 4, 2012) (dismissing for lack of personal jurisdiction based, in part, on conclusion that complaint failed to show copyright infringement action sufficiently related to forum state).

(Doc. No. 74 at 21-23 (footnotes omitted)). Regrettably for Plaintiff, and just as Defendants note in their Reply, Plaintiff's Response "wholly ignores the second prong of the [specific personal-jurisdiction due process] test: that 'the cause of action must arise from the defendant's activities' in the proposed forum state." (Doc. No. 88 at 2).

This is fatal to Plaintiff's attempt to make its *prima facie* showing of specific personal jurisdiction as to the Jurisdictional Defendants. Indeed, it is well-established that failing to respond, either at all or in a non-perfunctory and non-conclusory manner, to an argument waives any opposition to that argument. *See Taylor v. Unumprovident Corp.*, No. 1:03-CV-1009, 2005

WL 3448052, at *2 (E.D. Tenn. Dec. 14, 2005) (holding that "[a] responding party waives any opposition to an opponent's argument . . . by failing to respond to opponent's argument."); *Echols v. Kentucky Dep't of Juv. Just.*, No. 1:21-CV-00031-GNS-HBB, 2024 WL 3740595, at *6 (W.D. Ky. Mar. 4, 2024) (noting, in the context of a motion for summary judgment that "[i]n making a perfunctory response, unaccompanied by some effort of developed argumentation, the opposition to the issue may be deemed waived."), *report and recommendation adopted sub nom. Echols v. Just. & Pub. Safety Cabinet*, No. 1:21-CV-00031-GNS-HBB, 2024 WL 3740591 (W.D. Ky. May 6, 2024), *aff'd sub nom. Echols v. Kentucky Just. & Pub. Safety Cabinet*, No. 24-5715, 2025 WL 896922 (6th Cir. Mar. 24, 2025).

The forgoing principle holds true in the context of a challenge to personal jurisdiction in particular. Indeed, as one district court recognized, "by failing to respond to the merits of [a defendant's] personal jurisdiction argument," a plaintiff's opposition to that argument is waived. *Schall v. Suzuki Motor of Am., Inc.*, No. 4:14-CV-00074-JHM, 2017 WL 2059662, at *2 (W.D. Ky. May 12, 2017). *See also Sherman*, 2020 WL 3000452, at *9 (N.D. Ohio June 4, 2020) ("Plaintiff does not substantively address or oppose Defendants' arguments regarding general jurisdiction and, instead, limits her argument to the issue of specific personal jurisdiction. Thus, and in the absence of any meaningful opposition, the Court finds that general jurisdiction does not exist[]." (footnote omitted)); *BDK USA, Inc. v. FH Grp. Int'l, Inc.*, No. 220CV09174SBJEMX, 2021 WL 6496718, at *2 (C.D. Cal. Mar. 10, 2021) ("Defendant argues that it lacks sufficient contacts with California for the Court to exercise general personal jurisdiction. Plaintiff's Opposition fails to respond to these arguments or establish the Court's general personal jurisdiction over Defendant. Accordingly, Plaintiff has waived the argument[]." (internal citations omitted)).

So, given Plaintiff's failure to respond in his Response[28] to Defendants' arguments asserting Plaintiff's failure to make a *prima facie* showing as to the second prong of the specific personal-jurisdiction due process analysis, the Court finds that Plaintiff has waived any opposition to Defendants' argument on this point. Therefore, the Court finds that Plaintiff has not made a *prima facie* showing that the Court has specific personal jurisdiction over the Jurisdictional Defendants.[29]

---

[28] The SOF, for what it is worth—which as it turns out, is very little—addresses the "arise out of" prong in only the most conclusory manner, mainly by repeating verbatim the Amended Complaint's legal conclusions regarding specific personal jurisdiction. (Doc. No. 84-1 at ¶ 13 ("Plaintiff's claims arise out of, and result from those acts"), ¶ 16 ("Specific jurisdiction over each Defendant is appropriate because each Defendant has performed specific acts in this State and has purposefully availed itself of the privileges of conducting activities in this State. Plaintiff's claims arise out of and result from those acts.")). These conclusory assertions do nothing to dissuade the Court from its conclusion that Plaintiff has waived any opposition to Defendants' arguments as to Plaintiff not satisfying his *prima facie* showing as to the second prong of the specific personal-jurisdiction due process analysis. *Echols*, 2024 WL 3740595, at *6 ("In making a perfunctory response, unaccompanied by some effort of developed argumentation, the opposition to the issue may be deemed waived.").

The Court is aware that conceivably there might be allegations in the Amended Complaint (or assertions in the SOF) that support the notion that Plaintiff has satisfied its *prima facie* showing as to the "arise out of" prong of the specific personal-jurisdiction due process analysis. But, Plaintiff has not identified these allegations or assertions for the Court, and the Court will not do Plaintiff's job for it here. As the adage goes, "judges are not like pigs, hunting for truffles that might be buried in the record." *See Emerson v. Novartis Pharms. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (internal citations and quotation marks omitted).

[29] In the Amended Complaint, Plaintiff also alleges that "CYE is an alter-ego of Andrews as a matter of law." (Doc. No. at ¶ 23). That is to say, Plaintiff seems to rely on the notion that because (according to Plaintiff) CYE (a party over whom, it appears undisputed, the Court may exercise personal jurisdiction) is an alter ego of Andrews, the Court may exercise personal jurisdiction over Andrews. This argument is unavailing.

As background, with respect to the alter-ego theory of personal jurisdiction, the Sixth Circuit has held that "[t]he alter-ego theory provides for personal jurisdiction 'if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction.'" *Indah v. U.S. S.E.C.*, 661 F.3d 914, 921 (6th Cir. 2011) (citing *Estate of Thomson*, 545 F.3d at 362). Of note, the Court discerns that, as with other theories of personal jurisdiction, a plaintiff must, at the very least, make a *prima facie* showing on this alter-ego theory of personal jurisdiction. *Ramsbottom v. Ashton*, No. 3:21-CV-00272, 2022 WL 106733, at *18 (M.D. Tenn. Jan. 11, 2022) ("To avoid dismissal, the plaintiffs must make a *prima facie* showing of personal jurisdiction, which requires them to 'allege sufficient facts for considering [one set of defendants] the alter egos of [another defendant].'" (citation omitted)); *Wang v. Gen. Motors, LLC*, No. CV 18-10347, 2020 WL 4474163, at *7 (E.D. Mich. Aug. 4, 2020) ("Viewing the pleadings and evidence in Plaintiff's favor, the Court concludes that he has satisfied his 'relatively slight' burden and made a prima facie showing that personal jurisdiction exists [] based on the alter-ego theory.").

Accordingly—and given that, consistent with a footnote above, the Court has determined that Plaintiff is conceding a lack of *general* personal jurisdiction over the Jurisdictional Defendants—the Court will dismiss Plaintiff's claims (i.e., Claim I to the extent it is brought against the Jurisdictional Defendants but not to the extent it is brought against CYE) against the Jurisdictional Defendants (i.e., Andrews, Hope Channel, and AdventSource) for lack of personal jurisdiction as to the Jurisdictional Defendants. Such dismissal will be without prejudice.[30] *See Bass v. Bass*, No. 3:20-0203, 2021 WL 6618461, at *10 n.9 (M.D. Tenn. Dec. 6, 2021) ("a dismissal under 12(b)(2) for lack of personal jurisdiction, is ordinarily without prejudice."), *report*

---

With respect to the alter-ego theory of personal jurisdiction, Defendants assert in some detail that Plaintiff has failed to make a *prima facie* showing that CYE is an alter ego of Andrews. (Doc. No. 74 at 24-27). Plaintiff does nothing to oppose those arguments substantively. In its Response, Plaintiff does quote and refer to different tests employed for determining whether one entity is an alter ego of another. (Doc. No. 84 at 9-11). Substantively, however, Plaintiff offers only two, plainly inadequate ripostes to Defendants' argument that Plaintiff has failed to make a *prima facie* showing that CYE is an alter ego of Andrews. Plaintiff states:

> Paragraphs 23 through 50 of the []SOF submitted herewith clearly show every element of the test set forth in [*Dochnal v. Thomson Reuters Corp.*, 2018 WL 5045205 (E.D. Tenn. Oct. 17, 2018)]
>
> ***
>
> Plaintiff has alleged facts in the Amended Complaint and supported in the []SOF that clearly support a finding by this Court that CYE was a mere instrumentality of Andrews.

(Doc. No. 84 at 10, 11). Simply put, Plaintiff's argument here will not cut the mustard. An argument this perfunctory and conclusory is properly deemed to have been waived. *Echols*, 2024 WL 3740595, at *6 ("In making a perfunctory response, unaccompanied by some effort of developed argumentation, the opposition to the issue may be deemed waived."). Thus, the Court finds that Plaintiff has waived any opposition to Defendants' argument that Plaintiff has failed to make a *prima facie* showing that CYE is an alter ego of Andrews. And so, the Court accepts that Plaintiff has failed to make a *prima facie* showing that CYE is an alter ego of Andrews.

[30] Having concluded that dismissal of the Jurisdictional Defendants is appropriate pursuant to Rule 12(b)(2) for lack of personal jurisdiction, the Court declines to evaluate Defendants' alternative arguments that dismissal of the Jurisdictional Defendants is warranted pursuant to Rule 12(b)(3) for improper venue or pursuant to Rule 12(b)(6) for failure to state a claim.

*and recommendation adopted,* No. 3:20-CV-00203, 2022 WL 187816 (M.D. Tenn. Jan. 20, 2022).[31]

**2. Defendants' Rule 12(b)(1) Motion**

That takes the Court to Defendants' Rule 12(b)(1) motion. As noted above, via this particular motion Defendants argue that Plaintiff lacks standing to pursue its breach of contract claim (Claim II) against CYE, the sole defendant on Claim II. Below, the Court first discusses general principles regarding standing and then analyzes the parties' arguments raised with respect to standing.

*a. Standing Generally*

The Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. Standing is a core component of this "case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The requirement of standing "ensure[s] that federal courts do not exceed their authority," by "limit[ing] the category

[31] Finally, the Court is aware that when it lacks personal jurisdiction over a defendant or defendants, "it may dismiss [all or parts of] a case without prejudice or, in the interest of justice, transfer [all or parts of a case] to a court that has personal jurisdiction over the defendant[s that the original court lacks jurisdiction over]." *McManamon v. Lerner*, No. 1:24-CV-00635, 2024 WL 3925944, at *7 n.6 (N.D. Ohio Aug. 22, 2024) (citing *Cosmichrome, Inc. v. Spectra Chrome, LLC*, 504 F. App'x 468, 472 (6th Cir. 2012)); *Krawec v. Allegany Co-op Ins. Co.*, No. 1:08-CV-2124, 2009 WL 1974413, at *3 (N.D. Ohio July 7, 2009) ("[i]t is well-established that a district court [can] transfer some or all of the claims in a case when it finds that it cannot exercise personal jurisdiction." (citation omitted)).

Of note, in their Opening Brief, Defendants request, in the alternative to dismissal of the Jurisdictional Defendants for lack of personal jurisdiction, that "[i]f this Court concludes that it lacks jurisdiction over all (or some of) the Jurisdictional Defendants but concludes that dismissal is not proper, Sitler's claims against each of the Jurisdictional Defendants should be transferred to the respective judicial districts in which they reside" pursuant to 28 U.S.C. § 1406(a) and/or 28 U.S.C. § 1631. (Doc. No. 74 at 36-37). Here, however, where Plaintiff has not moved to (or otherwise requested) transfer, the Court does not discern that transfer is warranted and will not presume that Plaintiff wants (parts of) his case transferred to those districts where personal jurisdiction over the Jurisdictional Defendants would exist. *See McManamon*, 2024 WL 3925944, at *7 n.6 (declining to transfer case in lieu of dismissal where plaintiff had "not moved for transfer," and noting that "the Court will not presume [Plaintiff] wants his case transferred[.]"); *Cosmichrome, Inc.*, 504 F. App'x at 472 (noting that where plaintiffs never moved to transfer in lieu of dismissal that "they cannot now contend that the district court abused a discretion that it was never asked to exercise").

of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). In other words, standing is a jurisdictional requirement—and in particular a requirement for a federal court to exercise subject-matter jurisdiction over a particular action. *See Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915-16 (6th Cir. 2002). Thus, if no plaintiff has standing, the court entirely lacks subject-matter jurisdiction. *See Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). Importantly, standing is both plaintiff-specific and claim-specific. *Lucy v. Skrmetti*, No. 3:26-CV-00998, 2026 WL 2742357, at *8 n.24 (M.D. Tenn. Sept. 16, 2026). That is to say, "each plaintiff 'must demonstrate standing for each claim that [he or she] presses.'" *Moms for Liberty - Wilson Cnty., Tennessee v. Wilson Cnty. Bd. of Educ.*, 155 F.4th 499, 509 (6th Cir. 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). In other words, the Court potentially can exercise subject-matter jurisdiction only as to *each* plaintiff and *each* claim as to which standing has been established.

At the pleading stage—i.e., at the instant stage of this action—a plaintiff must plausibly allege the satisfaction of the three requirements of standing. *See Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 543-44 (6th Cir. 2021) *Summit Locations, LLC v. Bd. of Trs., Bath Twp., Ohio*, 190 F.4th 486, 491 (6th Cir. 2026) ("At the pleading stage, plaintiffs must plausibly allege the[] three elements [of standing]."). These three requirements are: "(1) [that plaintiff] suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citations omitted).

*b. Application*

Here, as noted above, Defendants argue that Plaintiff lacks standing to pursue its breach of contract claim (Claim II) against CYE. On this point, Defendants argue specifically:

> Here, no case or controversy exists because the allegations and documents attached to the Amended Complaint demonstrate that Sitler lacks standing to bring a breach of contract claim. The only agreement Sitler alleges exists is the one attached to the Amended Complaint as Exhibit A. *See* Compl. ¶ 110. All the obligations created in the Agreement are between CYE and "Sitler and Strong Productions," not Sitler himself. In particular, the Agreement states that "SSP may sell the 'David Music' starting at the Chosen Camporee, August 12, 2019," (emphasis added). But the basis of Sitler's breach of contract claim is that CYE breached the Agreement by "refus[ing] to provide [Sitler] with a booth to sell the Recordings at the 2019 Camporee[.]" *Compare* Compl., Exhibit A at ¶ 11, *with* Compl. at ¶ 42 (emphasis added).
>
> While Sitler may have owned SSP, that is not enough. Under Tennessee law, an owner or shareholder of a corporation may not sue in his individual capacity for breach of an obligation owed to the corporation. *See Muse v. First People's Bank of Tennessee*, No. E2005-02869, 2007 WL 845893, at *10 (Tenn. Ct. App. Mar. 21, 2007) (quoting *Hadden v. City of Gatlinburg*, 746 S.W.2d 687, 689 (Tenn. 1988) ("[a] corporation and its stockholders are distinct legal entities even if all the stock in the corporation is owned by one stockholder. Even a stockholder who is the sole shareholder of a corporation may not bring a suit to right a wrong done to the corporation.").
>
> While the Amended Complaint does attach an assignment of rights, it only assigned rights held by Andrew Strong to Sitler. *See* Compl., Exhibit E. Indeed, that assignment actually makes clear that SSP is a valid legal entity—and hence must maintain actions in its own name. *See id.* (referencing "SSP" and stating "[a]ny business or legal actions taken on behalf of Sitler and Strong are the sole responsibility of Brian Sitler."). What is lacking are any allegations that SSP, the entity that possessed the contractual right to "sell the David Music" at the 2019 Camporee (which Sitler alleges forms the basis of his claim) assigned that right to Sitler, thus conferring him standing to sue for its deprivation. *See Hight v. Tramel*, No. M2019-00845, 2020 WL 6748789, at *1 (Tenn. Ct. App. Nov. 17, 2020) (affirming dismissal of an individual's action based on rights vested in the corporation for which the individual was a shareholder because there was no evidence that the corporation had assigned its rights to the individual shareholder"). Without that, Sitler's breach of contract claim should be dismissed pursuant to Rule 12(b)(1).

(Doc. No. 74 at 28-29 (footnote omitted)).[32] In summary, Defendants argue that Plaintiff lacks standing to bring a breach-of-contract claim on the basis of the Agreement because "[a]ll the obligations created in the Agreement are between CYE and 'Sitler and Strong Productions,' not Sitler himself." (*Id.* at 28). Although not explicit on this point, this argument seems to go towards standing's injury-in-fact requirement, insofar as Defendants are asserting that Plaintiff lacked contractual rights under the Agreement and thus (the argument would go) could not have suffered an injury from any purported performance (or lack thereof) under the Agreement.

In any event, Plaintiff fails entirely to address this argument. Indeed, Plaintiff does not even mention standing in his Response, or indeed in the SOF. This will not do. Just as with personal jurisdiction, Plaintiff bears the burden to establish standing. And just as with personal jurisdiction, where a plaintiff (like Plaintiff here) fails to respond to an argument asserting a lack of standing, the plaintiff "effectively concede[s] this argument and waive[s] any opposition." *City of Painesville, Ohio v. Browning-Ferris Indus. of Ohio, Inc.*, No. 1:26-CV-1433, 2026 WL 2056022, at *4 (N.D. Ohio July 16, 2026). *See also Napper v. Hankison*, No. 3:20-CV-764-BJB-RSE, 2021 WL 1176187, at *4 n.2 (W.D. Ky. Mar. 26, 2021) ("The Plaintiffs' opposition failed to respond to [a defendant's] argument that the Plaintiffs lacked standing, and likely conceded that point by leaving it unrebutted." (internal citations omitted) (citing *Allstate v. Global Med. Billing*, 520 F. App'x 409, 412 (6th Cir. 2013)); *Global Med. Billing*, 520 F. App'x at 412 ("Plaintiff's failure to respond to Defendants' attack on its standing . . . amounts to a waiver of the argument").

[32] Of note, Defendants state that CYE "does not concede that Tennessee law governs either this dispute or the interpretation of the Agreement. But for purposes of th[e] Motion[], if Tennessee law applies, Tennessee law requires dismissal of Plaintiff's breach of contract claim." (Doc. No. 74 at 29 n.8). Ultimately, the Court need not determine what state law applies to the interpretation of the Agreement given that Plaintiff simply fails to address Defendants' standing argument.

And so, the Court treats Plaintiff as effectively conceding that he lacks standing to bring his breach of contract claim (Claim II) against CYE. Thus, because Plaintiff lacks standing to bring Claim II against CYE, the Court lacks subject-matter jurisdiction over Claim II—which as noted above is brought solely against CYE—and the Court will dismiss Claim II in its entirety. Such dismissal will be without prejudice. *See Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 F. App'x 6, 11 (6th Cir. 2018) (noting that the "general rule that a dismissal for lack of standing is without prejudice").

**3. Defendants' Rule 12(b)(6) Motion**

That leaves Defendants' Rule 12(b)(6) motion. Given the Court's dismissal of the Jurisdictional Defendants from this action, as well as the dismissal of Claim II, the only claim remaining to consider is Claim I (Plaintiff's copyright infringement claim) to the extent that that claim is brought against CYE, the (now) sole remaining defendant in this action.

With respect to whether Plaintiff has stated a claim in Claim I, Defendants argue, in short:

> The Amended Complaint alleges two separate categories of infringement: (1) "Recordings," which are purportedly covered by Sitler's Copyright Registration in the "sound recording" for the Chosen (a/k/a David) musical (*see* Compl. ¶ 86 (Registration Certificate)); and (2) "Unauthorized Derivative Works," which Sitler alleges are various modifications to the Recordings (*see id.* at ¶ 95). But the Amended Complaint fails to state a claim for infringement of either.

(Doc. No. 74 at 31).[33] Regrettably again for Plaintiff, he fails to respond in an appropriate manner to these arguments. Indeed, all that Plaintiff states (aside from quotations of certain legal standards) in opposition to Defendants' argument on this point is:

> Plaintiff's Declaration and the exhibits attached thereto create a genuine issue of material fact with respect to all claims made by Plaintiff in this case.

[33] In asserting that Plaintiff fails to state a claim in Claim I, Defendants provide more fulsome briefing beyond the summary of Defendants' argument quoted above. (Doc. No. 74 at 31-34). The Court herein omits the discussion of that briefing, both for the sake of brevity and because a discussion of such briefing is unnecessary to the Court's resolution of the Motion.

> Plaintiff's Amended Complaint satisfies the standards of pleading with respect to the substance of his Complaint. For these reasons, Defendants FRCP 12(b)(6) Motion should be denied in its entirety.
>
> Further, Defendants 12(b)(6) Motion is a motion on the merits disguised as a procedural motion. The contract attached to the Amended Complaint at issue in this case is absolutely ambiguous, and this Court will be required to consider extraneous proof to be developed during the merits discovery phase of this litigation in order to construe that agreement.

(Doc. No. 84 at 12). This will not do. As an initial matter, what is relevant at the 12(b)(6) stage is not whether there is a genuine issue of material fact,[34] but rather whether a complaint (and whatever the Court may appropriately consider on a 12(b)(6) motion) contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft*, 556 U.S. at 678.

Further, the Court has no idea what Plaintiff means by its assertion that "Defendants 12(b)(6) Motion is a motion on the merits disguised as a procedural motion." (Doc. No. 84 at 12). True, a motion to dismiss brought pursuant to Rule 12(b)(6) is a "motion on the merits." But the Court does not understand why Plaintiff asserts that Defendant has disguised this Rule 12(b)(6)

[34] Plaintiff seems to be arguing that the Court should, potentially, convert Defendants' 12(b)(6) motion into a motion for summary judgment under Rule 56, thereby making the relevant inquiry an inquiry into whether there is a genuine issue of material fact as to Claim I. The basis for this argument seems to be rooted in the notion that (according to Plaintiff) "Defendants have introduced matters outside the pleadings in support of their Motion to Dismiss under FRCP 12(b)(6)." (Doc. No. 84 at 11). And by matters outside of the pleadings, Plaintiff seems to be referring to the Agreement itself, which Defendants refer to and cite in their arguments for dismissal pursuant to Rule 12(b)(6). (Doc. No. 74 at 31, 32, 33, 35). However, a copy of the Agreement was attached as an exhibit at Docket No. 67-1 to the Amended Complaint. And importantly, as the Court noted above "[a]ttachments to a complaint are treated as part of the complaint," *Tucker*, 2010 WL 883813, at *2, and "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430. So, there is no merit to any argument by Plaintiff that Defendants' Rule 12(b)(6) motion should be converted into a motion for summary judgment under Rule 56 because Defendants refer to and cite the Agreement in connection with their Rule 12(b)(6) argument.

motion as a "procedural motion"; it seems quite clear that this motion is, in substance as well as form, merits-based rather than procedural in nature.

Beyond the deficiencies in the (minimal) substance presented in Plaintiff's opposition to Defendants' Rule 12(b)(6) arguments, there is an even greater problem for Plaintiff here. By responding to Defendants' arguments for dismissal under Rule 12(b)(6) in the perfunctory and conclusory manner that he has, Plaintiff has waived any opposition to those arguments for dismissal. *See Garrett v. Martinrea Auto. Structures (USA), Inc.*, No. 3:25-CV-00268, 2026 WL 2883848, at *6 (M.D. Tenn. Sept. 24, 2026) (Richardson, J.) ("it is well-settled that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived, and that [i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quoting *Pryor v. Holder*, 436 F. App'x 471, 479 (6th Cir. 2011)) (internal quotation marks omitted); *Thomas v. Tennessee Dep't of Hum. Servs.*, No. 3:21-CV-00426, 2022 WL 2286780, at *6 (M.D. Tenn. June 23, 2022) (Richardson, J.) ("where a party fails to respond to an argument in a motion to dismiss, 'the Court assumes he concedes this point and abandons the claim.'" (quoting *PNC Bank, Nat'l Ass'n v. Goyette Mech. Co.*, 88 F. Supp. 3d 775, 785 (E.D. Mich. 2015))); *PNC Bank*, 88 F. Supp. 3d at 785 (finding the plaintiffs abandoned claims when their response to the defendants' motion to dismiss stated "dismissal is not warranted" but "fail[ed] to address the substance of the [ ] defendants' contentions"). Indeed, just as the undersigned recently observed, even where a response to a motion to dismiss argues that a "case should not be dismiss[ed],"—which is effectively all that Plaintiff's Response in opposition to Defendants' Rule 12(b)(6) motion does—such an argument is plainly "not enough to constitute a response to [] arguments for dismissal under Rule 12(b)(6)." *Garrett*, 2026 WL 2883848, at *6.

So, the Court will grant Defendants' Rule 12(b)(6) motion as both well-taken and effectively unopposed, and thus Claim I, to the extent it is brought against CYE, will be dismissed pursuant to Rule 12(b)(1).[35]

## CONCLUSION[36]

For the reasons stated herein, the Motion (Doc. No. 73) will be **GRANTED** to the extent described herein, and each of Plaintiff's claims will be dismissed in their entirety. Specifically, the Motion will be granted as to Claim I (the sole claim brought against the Jurisdictional Defendants) to the extent it is brought against the Jurisdictional Defendants (i.e., Andrews, Hope Channel, and AdventSource); the dismissal of the Jurisdictional Defendants is pursuant to Rule 12(b)(2) for lack of personal jurisdiction over the Jurisdictional Defendants, and it will be without prejudice. Likewise, the Motion will be granted as to Claim II (which is brought solely against CYE) in its entirety; that dismissal is pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction due to Plaintiff's lack of standing to bring Claim II against CYE, and it will be without prejudice. Additionally, the Motion will be granted as to Claim I to the extent it is brought against CYE; that dismissal will be pursuant to Rule 12(b)(6) for failure to state a claim.

An appropriate accompanying order will be entered.

Eli Richardson
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[35] Defendants also raise the issue of transferring, pursuant to 28 U.S.C. §1404(a), Plaintiff's claims against CYE if any of those claims are not dismissed. (Doc. No. 74 at 36, 37-40). Given that all of Plaintiff's claims against CYE (and indeed all of Plaintiff's claims in this action) will be dismissed for the reasons described herein, any request for transfer of Plaintiff's claims against CYE can (and will) be denied.

[36] The Court notes, finally, that it is aware that Plaintiff requested that "[i]n the event this Court determines there has been a technical deficiency in the Amended Complaint," the Court grant Plaintiff "the right to amend the same." (Doc. No. 84 at 13). As should be evident from this memorandum opinion, the Court is not dismissing any of Plaintiff's claims on the basis of any mere "technical deficiency" (whatever that term means precisely) in the Amended Complaint. And so, Plaintiff's request to amend the Amended Complaint can be, and is, denied.